## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 4599 | **DATE** | 2/12/2003 |
| **CASE TITLE** | E&J Gallo vs. Morand Bros. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
       ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's Motion to Strike or, in the Alternative, to Dismiss Defendant's First Amended Counterclaim is granted in part and denied in part. The motion is granted with respect to counts three, five, six, seven and eight. These counts are dismissed without prejudice. The motion is denied with respect to counts one, two and four. Romano is directed to re-plead the facts in its First Amended Counterclaim consistent with this opinion. Romano has until March 14, 2003 to file a Second Amended Counterclaim.
(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 13 2003 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TH ✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

**FEB 1 3 2003**

| | |
|---|---|
| E&J GALLO WINERY, ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | |
| ) | No. 02 C 4599 |
| v. ) | |
| ) | Judge Amy J. St. Eve |
| MORAND BROS. BEVERAGE CO., d/b/a ) | |
| ROMANO BROS. BEVERAGE CO., an Illinois ) | |
| corporation, CENTRAL WHOLESALE CO., INC., ) | |
| an Illinois corporation, MUELLER ) | |
| DISTRIBUTING CO., INC., an Illinois ) | |
| corporation, and PARAMOUNT DISTRIBUTING ) | |
| COMPANY, INC., an Illinois corporation, ) | |
| ) | |
| Defendants/Counter-Plaintiffs. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff/Counter-Defendant E&J Gallo Winery has moved to strike or dismiss Defendants' First Amended Counterclaim. For the reasons set forth below, Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff E&J Winery ("E&J"), a California corporation with its principal place of business in Modesto, California, and Defendants Morand Brothers Beverage Company ("Morand"), Central Wholesale Company ("Central"), Mueller Distributing Company, Inc. ("Mueller") and Paramount Distributing Company, Inc. ("Paramount")[1] were longstanding business partners. Each Defendant had various agreements with E&J to distribute E&J's

---

[1] Collectively, Defendants are referred to as "Romano"

1

products in Illinois, including E&J's wines, malt beverage coolers and similar flavored malt beverage products such as Bartles & Jaymes Wine Coolers.

In late 2001, the business relationship between E&J and Romano started to deteriorate. This deterioration of the relationship began with the anticipated sale by Romano of its business to Southern Wine & Spirits of Illinois, Inc. ("Southern") and the proposed transfer of Romano's agreements with E&J to Southern. Further details concerning the background behind this litigation are set forth in the Court's opinion in *E & J Gallo Winery v. Morand Bros. Beverage Co.*, No. 02 C 4599, 2002 WL 31557516 (N.D. Ill. Nov. 15, 2002).

Two types of written agreements governed the business relationship between the parties. First, the parties entered certain agreements whereby Defendants would distribute E&J's wine products in Illinois (the "Wine Agreements"). Second, in 1998, E&J and Defendants entered certain malt beverage distributorship agreements (the "Malt Agreements") under which Defendants distributed E&J's malt beverages in Illinois. Both the Wine Agreements and Malt Agreements contained contain a forum selection clause whereby the parties agreed to bring any cause of action between the parties in California. The parties also had various oral agreements covering their relationship.

On June 27, 2002, Plaintiff filed this case premised on the Malt Agreements in the Northern District of Illinois against Morand, Central, Mueller and Paramount. Later that same day, Plaintiff filed a similar action based on the Wine Agreements in the United States District Court for the Eastern District of California, *E&J Winery v. Morand Bros. Beverage Co., et al.*, No. CIVF-02-5776 (hereinafter the "California case"), naming the same parties as defendants.

After filing the complaint in this district, E&J subsequently moved to enforce the forum

2

selection clause in the Malt Agreements and transfer this case to the Eastern District of California. This Court denied that motion, holding that the forum selection clause in the Malt Agreements is unenforceable in light of Illinois' strong public policy to have litigation under the Illinois Beer Industry Fair Dealing Act, 815 ILCS 720.1, *et seq*, (the "Beer Act") adjudicated in Illinois. *See E & J Gallo Winery*, 2002 WL 31557516 at *3-4. A motion to transfer the California case to this district is pending in California.

On November 1, 2002, Defendants filed a First Amended Counterclaim in this case alleging a breach of Plaintiff's fiduciary duty to Romano, violations of the Beer Act and the Sherman Antitrust Act, tortious interference with prospective economic advantage, promissory fraud and breach of contract. The counterclaims pertain to both the Wine Agreements and the Malt Agreements. Plaintiff now seeks to dismiss or strike the counterclaims.

## ANALYSIS

Defendants' First Amended Counterclaim contains eight counts. Count one alleges that E&J breached its fiduciary duty to Romano. Count two alleges violations of the Illinois Beer Act. Count three seeks recovery for antitrust violations under the Sherman Act, 15 U.S.C. § 1, *et seq*. Counts four through six allege that E&J tortiously interfered with prospective and contractual relations. Count seven alleges promisory fraud, and count eight alleges breach of contract. E&J seeks to dismiss or strike each of these counterclaims. E&J argues that a substantial portion of the First Amended Counterclaim falls within the California forum selection clause in the Wine Agreements and is thus inappropriately before this Court.

I. **Legal Standards**

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of a complaint, not the merits of the case. *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989); *Majchrowski v. Norwest Mortgage, Inc.*, 6 F.Supp.2d 946, 952 (N.D. Ill.1998). When considering a motion to dismiss pursuant to Rule 12(b)(6), the Court considers "whether relief is possible under [any] set of facts that could be established consistent with [the] allegations." *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992).

The Court views all the facts alleged in the complaint, as well as any reasonable inferences drawn from those facts, in the light most favorable to the plaintiff. *Stachon v. United Consumers Club, Inc.*, 229 F.3d 673, 675 (7th Cir. 2000); *Tatz v. Nanophase Techs. Corp.*, No. 01 C 8440, 2002 WL 31269485, at *3 (N.D. Ill. Oct. 9, 2002). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). Dismissal is appropriate only where it appears beyond doubt that under no set of facts would plaintiff's allegations entitle him to relief. *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Kennedy v. National Juvenile Det. Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999). The complaint, however, must allege that each element of a cause of action exists in order to withstand a motion to dismiss. *Lucien v. Preiner*, 967 F.2d 1166, 1168 (7th Cir. 1992). Furthermore, a plaintiff "cannot satisfy federal pleading requirements merely by attaching bare legal conclusions to narrated facts which fail to outline the bases of their claims." *Collins v. Snyder*, No. 02 C 4493, 2002 WL 31749173, at *1 (N.D. Ill. Dec. 2, 2002) (citations and quotations omitted).

Rule 12(f) provides that a court may strike from any pleading "any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Generally, motions to strike are

disfavored. *Porter v. International Bus. Machs. Corp.*, 21 F.Supp.2d 829, 831 (N.D. Ill. 1998)(citations omitted). The party moving to strike has the burden of showing that the "challenged allegations are so unrelated to plaintiff's claim as to be devoid of merit, unworthy of consideration, and unduly prejudicial." *Carroll v. Chicago Transit Auth.*, No. 01 C 8300, 2002 WL 206064, at *1 (N.D. Ill. Feb. 8, 2002). The decision whether to strike material under Rule 12(f) is within the discretion of the district court. *Alvarado-Morales v. Digital Equip. Corp.*, 843 F.2d 613, 618 (1st Cir. 1988).

## II. Forum Selection Clause

As an initial matter, E&J argues that five of the eight counterclaims – counts three, and five through eight – are barred under the forum selection clauses in the Winery Agreements because they deal "almost exclusively" with issues pertaining to the distribution of wine under the Wine Agreements. E&J claims that the Court should dismiss these claims because they are governed by the forum selection clause and therefore must be litigated in California. Romano argues that the Court should not enforce the forum selection clause and that the counterclaims are not easily divided into wine claims and malt claims.

The forum selection clause in the Wine Agreements provides that "any cause of action between the parties, whether under this agreement or otherwise, must be brought only in a court having jurisdiction and venue at the home office of winery," namely California. The Court previously held that the essentially identical California forum selection clause in the Malt Agreements was unenforceable because of Illinois' stated public policy governing Beer Act

litigation.[2] E&J now seeks to have the forum selection clause enforced as to counterclaims under the Wine Agreements.

The Seventh Circuit addressed a similar issue in *Publicis Comm. v. True N. Comms., Inc.*, 132 F.3d 363, 366 (7th Cir. 1997), where related cases were pending in federal court in the Northern District of Illinois and in state court in Delaware. The parties had executed a "pooling agreement" which contained a forum selection clause requiring the parties to file any claims arising out of the pooling agreement in Delaware. True North sued Publicis in Delaware over the pooling agreement. Publics subsequently brought suit against True North in federal court in Chicago on the basis that True North had violated a duty to its investors. In response, True North filed counterclaims in Chicago that arose under the pooling agreement and Publicis sought to dismiss these counterclaims as violating the forum selection clause. The Seventh Circuit agreed with Publicis and stated that the pooling agreement counterclaims should have been brought in Delaware pursuant to the forum selection clause "whether or not they would be 'compulsory' counterclaims" in the Illinois case. *Id.* at 366.

The Seventh Circuit's holding in *Publicis* applies here. Because counts three, five, six, seven and eight of the First Amended Counterclaim are governed by the California forum selection clause, those counts should have been brought in California. Accordingly, those counts are dismissed without prejudice. The Court's ruling is also influenced by the fact that Romano will not be prejudiced by dismissal of these counterclaims because, as E&J admits, these "wine-related claims could be brought as counterclaim in the California Case." If the California court

---

[2] Contrary to Defendant's assertion, the Court did not decline to enforce the forum selection clause in the Wine Agreements by denying Plaintiff's motion to transfer the counterclaims.

grants the motion to transfer the case pertaining to the wine agreements to this jurisdiction, Romano will not be prejudiced from asserting these counterclaims in the case. Moreover, Romano is not prejudiced from refiling these claims here based only on the Malt Agreements.

This case illustrates the difficulty of having these two cases proceed in different jurisdictions. Although different agreements are at issue in the cases, the facts overlap considerably and the parties are identical. The Court previously declined to transfer this case because of Illinois' strong public policy requiring that litigation under the Illinois Beer Act be adjudicated in Illinois. The Court notes that for reasons of efficiency and judicial economy, however, it would behoove the parties to agree to proceed with all of their litigation before one court.

### III. The Malt Agreements

Section III of the Malt Agreements contains a provision releasing the parties from claims where such claims are "not described in a written notice specifying the nature and amount of such claims, damages, obligations or liabilities, and received by the adverse party within one year after such claims, damages, obligations or liabilities first arose." E&J argues that Romano's counterclaims are barred by this section because Romano did not provide E&J with the requisite notice within the mandated one year period. Romano counters that it provided E&J with notice by timely filing the counterclaims. Romano also contends that E&J had actual notice of the claims at or around the time they arose and that Romano did not have to provide formal written notice.

In support of its argument, E&J relies on a series of California cases purporting to require formal written notice. These cases are inapposite, however, because the notice provision in each

7

of these cases specifically required formal written notice as a precondition to filing a lawsuit. *See Soltani v. Western & Southern Life Ins. Co*, 258 F.3d 1038, 1041 & 1047 (9th Cir. 2001) (refusing to enforce contractual provision that required employee "not to commence any action or suit relating to your employment . . .until ten days after service . . . of a written statement of the particulars and amount of your claim "); *Hart v. Alameda County*, 90 Cal. Rptr. 2d 386, 392 & 395 (Cal. Ct. App. 1999) (California statute provides "no suit for 'money or damages' may be brought against a public entity until a written claim has been presented to the public entity and the claim either has been acted upon or is deemed to have been rejected" is designed to give public entities opportunity to investigate and settle meritorious cases). In contrast, the contracts at issue in this case do not state that the notice has to be given prior to filing a lawsuit.

Furthermore, E&J's contention that the filing of the counterclaims without prior written notice deprived them of their right to "address Romano's purported disputes in a non-litigious manner" rings hollow because E&J initiated this litigation, not Romano. *Cf. Johnson v. Consolidated Rail Corp.*, 565 F.Supp. 1025, 1027 (N.D. Ind. 1983) (rejecting City's argument that defendant could not proceed with counterclaims because defendant did not give required notice where City filed lawsuit, noting that "[t]o hold otherwise would lead to the absurdity of the City being allowed to press its claim against the defendant while, on the identical set of facts and the same cause of action, the defendant would be denied not only an effective defense, but any right to assert a counterclaim against the City"). Thus, this Court concludes that Romano provided adequate written notice under the Malt Agreements by filing the detailed counterclaim.[3]

---

[3] E&J also seeks to have counts three, five and six dismissed because the Malt Agreements contain a mutual release section. Because the Court dismisses these counts in light of the forum selection clause, the Court need not address this argument.

## IV. Count One – Breach of a Fiduciary Duty

Count one of the counterclaim alleges that E&J breached its fiduciary duty to Romano. Romano alleges the nature of its relationship with E&J created a fiduciary relationship and that E&J breached it by "exploiting Romano's trust to obtain a selfish benefit for [E&J] at Romano's expense."

E&J argues that the Court should dismiss count one because, as a matter of law, a fiduciary relationship cannot exist between a manufacturer like E&J and a non-exclusive distributor such as Romano. E&J relies on *Premier Wine & Spirits v. E. & J. Gallo Winery*, 846 F.2d 537 (9th Cir. 1988), to support its argument. In *Premier*, however, the Ninth Circuit did not say that a fiduciary relationship could never exist between a producer and a non-exclusive distributor. Instead, the Ninth Circuit clearly stated that the plaintiff "makes no other showing that fiduciary duties existed, and the bare franchisor/franchisee relation which it claims is not enough to establish such obligations between a producer and a non-exclusive distributor." *Id.* at 540.

Here, Romano has alleged significantly more than a mere producer/distributor relationship. In the counterclaim, Romano alleges that it did not have a "typical arms-length relationship" with E&J. (First Am. Countercl. ¶8.) "Rather, as the world's largest wine maker, [E&J] exercised a degree of domination, control, and even intimidation of Romano that no other manufacturer even attempted." (*Id.*) Romano alleges that it reposed "a high degree of trust in [E&J] to not take advantage of Romano and to allow Romano a reasonable return for distributing and selling [E&J's] products." (*Id.* ¶57.) "The trust Romano reposed in [E&J] on a business level was increased and reinforced by the unusually close family bond that developed between

9

the Romano and Gallo families, which [E&J] cultivated and encouraged." (*Id.* ¶¶11, 58.) Furthermore, Romano asserts that E&J possessed "a high level of domination and control over Romano" given their relationship. (*Id.* ¶60.) These allegations sufficiently allege a fiduciary duty between Romano and E&J, thus E&J's argument fails.

Even if a fiduciary relationship does not exist as a matter of law, it may nevertheless exist when trust and confidence are reposed by one in another so that the latter gains influence and superiority over the other. *See Recorded Pictures Co. v. Nelson Entm't, Inc.*, 61 Cal. Rptr. 2d 742, 754 (Cal. Ct. App. 1977); *Pottinger v. Pottinger*, 605 N.E.2d 1130, 1137 (Ill. App. Ct. 1992). Furthermore, the existence of a fiduciary duty generally is a question of fact, *GAB Business Service, Inc., v. Lindsey*, 83 Cal. App. 4th 409, 416 99 Cal. Rptr. 2d 665 (Cal. Ct. App. 2000), and thus typically not appropriate for disposal on a motion to dismiss.

## V.   Count Two – The Beer Act

Count two alleges that E&J violated the Beer Act. Romano alleges that E&J violated various provisions of the Beer Act, including Section 6 which provides that "[n]o brewer[4] shall unreasonably withhold or delay its approval of any assignment, sale or transfer of the stock of a wholesaler or all or any portion of a wholesaler's assets . . . , including the wholesaler's rights and obligations under the terms of an agreement whenever the person or persons to be substituted meet reasonable standards." 815 ILCS 720/6(1).

### A.   Section 6 Claim

E&J claims that Romano has not sufficiently pled a violation of Section 6 of the Beer Act because Romano did not allege that it provided E&J with "all requested information" regarding

---

[4] Romano alleges that E&J is a brewer and Romano is a wholesaler under the Beer Act.

the proposed purchase by Southern within 60 days of the proposed sale as required under Section 3(F).

Section 3(F) of the Beer Act provides that a "brewer may cancel . . . or otherwise terminate an agreement without furnishing any prior notification" where a wholesaler transfers its business ownership without obtaining prior consent as required in Section 6 "unless the brewer neither approves, consents to, nor objects to the transfer within 60 days after receiving all requested information from the wholesaler regarding the proposed purchase, in which event the brewer shall be deemed to have consented to the proposed transaction."

Section 3(F) is separate from Section 6 of the Beer Act and not referenced as an element in Section 6. Rather than being an element of a claim under Section 6, the plain language of the Beer Act suggests that Section 3(F) provides a defense for a brewer who cancels or terminates an agreement under certain circumstances. Accordingly, the Court concludes that Romano did not need to allege that it provided E&J with "all requested information" as part of its Section 6 claim.

### B. Section 5 Claims

In count two of Romano's counterclaims, it also alleges that E&J violated Sections 5(4) and 5(9) of the Beer Act. Section 5(4) requires that a brewer to provide a wholesaler with a written contract embodying the agreement and that the written contract conform to the Beer Act. 815 ILCS 720/5(4). Section 5(9) prohibits a brewer from presenting a wholesaler with an agreement "that attempts to waive compliance with any provision of this Act or that requires the wholesaler to waive compliance with any provision of this Act." 815 ILCS 720/5(9).

E&J contends that the Malt Agreements do not violate Sections 5(4) or 5(9) because they expressly incorporate the Beer Act and provide that to the extent the agreements do not conform

11

to the Act, the agreements "are deemed modified to conform to those provisions." Romano alleges, however, that the Malt Agreements did not embody the full scope of the parties agreements. This sufficiently states a claim under Section 5(4) that the brewer failed to provide "a written contract which embodies the brewer's agreement."

Furthermore, Romano alleges that E&J submitted a "Transition Agreement" in June 2002 which "contained a broad general release clause which sought to have Romano waive its right to seek redress for the numerous Beer Act and other violations" described in the counterclaims. Viewing the allegations in the light most favorable to Romano, these allegations are sufficient to state a claim under Section 5(9).

## VI. Count Four – Tortious Interference with Prospective Economic Advantage

Under Illinois law, in order to state a claim for tortious interference with prospective economic advantage, Romano must allege the following elements: (1) Romano must have a "reasonable expectancy of a valid business relationship with a third party;" (2) E&J must know of that prospective business relationship; (3) E&J must "intentionally interfere with the prospective business relationship such that the prospective business relationship never materializes;" and (4) the interference must cause damage to Romano. *Interim Health Care of Northern Illinois, Inc. v. Interim Health Care, Inc.*, 225 F.3d 876, *886 (7th Cir. 2000) (citations omitted).

E&J contends that Romano has failed to adequately allege the third element of the claim. Specifically, E&J argues that Romano has failed to allege that E&J committed acts of interference directed at third parties. E&J relies on *George A. Fuller Co. v. Chicago College of Osteopathic Med.*, 719 F.2d 1236, 1331 (7th Cir. 1983), in support of its argument. In *Fuller*, the

12

Seventh Circuit held that "liability for tortious interference may only be premised on acts immediately directed at a third party which cause that party to breach its contract with plaintiff." *Id.* at 1331.

Romano argues that *Cook v. Winfrey*, 141 F.3d 322 (7th Cir. 1998), supersedes *Fuller* and that *Cook* abolishes the interference directed at third parties element. The Court disagrees with this reading. The Seventh Circuit in *Cook* did not hold that a tortious interference with prospective economic advantage claim does not include an element of interference directed at a third party. Instead, *Cook* addressed the federal pleading requirements with respect to this element. In response to the defendant's argument that the plaintiff had to identify the specific third party, the Seventh Circuit stated that "this entire argument strays rather far afield from the minimal requirements of federal notice pleading." *Id.* at 328. The federal pleading requirements "do not require that [plaintiff's] complaint allege the specific third party or class of third parties with whom [plaintiff] claims to have had a valid business expectancy." *Id.*

In any event, count four satisfies Romano's federal notice pleading obligations. Romano alleges that E&J "knew that Southern might have refused to go forward with the sale" of Romano's business to Southern if E&J terminated Romano's distributorship agreement. (First Am. Countercl. ¶89.) It also alleges that E&J knew if "it terminated the Romano Companies' distributorship and refused to accept Southern as a distributor Southern would negatively and substantially adjust the purchase price for the Romano Companies' business." (*Id.* ¶90.) Furthermore, Romano alleges that E&J terminated the Romano Companies' distributorship and refused to accept Southern as a distributor. (*Id.* ¶92.) These allegations are sufficient to allege that E&J directed its interfering actions, at least in part, toward Southern. *Cook*, 141 F.3d at 328.

E&J also argues that count four is barred by the statute of limitations. A five year statute of limitations governs tortious interference claims in Illinois. *See Poulous v. Luthern Soc. Service of Ill.*, 312 Ill. App.3d 731, 746, 728 N.E.2d 547, 560 (1st Dist. 2000). Count four pertains to conduct in 2001 and 2002, thus it is clearly timely.

## CONCLUSION

Plaintiff's Motion to Strike or, in the Alternative, to Dismiss Defendant's First Amended Counterclaim is granted in part and denied in part. The motion is granted with respect to counts three, five, six, seven and eight. These counts are dismissed without prejudice. The motion is denied with respect to counts one, two and four. Romano is directed to re-plead the facts in its First Amended Counterclaim consistent with this opinion.

Dated: February 12, 2003          ENTERED:

_____
AMY J. STEVE
United States District Judge

14